■ MAHN REAL ESTATE CORPORATION, Respondent, v ARTHUR SHAPOLSKY, Appellant.—Order, Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered August 2, 1990, which denied the defendant's motion for summary judgment dismissing the complaint and for judgment on his counterclaim, unanimously reversed, on the law, the defendant's motion for summary judgment is granted, the complaint is dismissed, judgment is awarded on the defendant's counterclaim, and the matter is remitted to the Supreme Court for an assessment of reasonable attorneys' fees to be awarded the defendant, with costs.

On October 27, 1987, the defendant entered into a contract to sell eight contiguous parcels of realty and a five-story building located in Rochester, New York to the plaintiff for $999,000. Principals of the plaintiff, Soloman and Isaac Meisels, contacted the defendant's late father, Sam Shapolsky, after seeing the property advertised in a newspaper. According to the parties' depositions, at a meeting in October of 1987, Shapolsky showed the Meisels a photograph of the property, on which a nursing and retirement home had been operated, and the parties discussed the total number of rooms in the building and the purchase price. The Meisels conceded that specifics as to personalty were not discussed but maintain that they were led to believe that facilities necessary for the operation of a nursing and retirement home were intact and would be included in the purchase price.

Following this meeting, an employee of the plaintiff attempted to inspect the property. Since he was unable to gain

access to the inside of the building, he examined the exterior and looked in the windows. Based on the employee's report, the plaintiff decided to sign a contract to purchase the property. After negotiating the details of the contract with the advice of attorneys, the parties signed the contract. The plaintiff gave the defendant $100,000 as a downpayment on the property with the money placed in escrow. Closing was scheduled for December 21, 1987.

After signing the contract, Isaac Meisels inspected the property with an architect and discovered that items such as bathtubs and refrigerators, necessary for the operation of a nursing home, were missing. He also discovered that due to a surplus of nursing homes in the area, it would not be economically feasible to operate the premises as planned.

The plaintiff decided not to close and instituted this action to recover its downpayment alleging, *inter alia,* that the defendant breached the contract by wrongfully removing, causing or permitting to be removed various fixtures and items of personal property included in the sale. The defendant moved for summary judgment dismissing the complaint and for a judgment on its counterclaim directing the escrow agent to deliver the $100,000 to him, on the ground that the plaintiff wrongfully refused to close title.

The Supreme Court denied the defendant's motion for summary judgment, concluding that a merger clause contained in the parties' contract was not specific enough to bar parol evidence of the misrepresentations alleged to have been made by the defendant. We disagree.

The sales contract signed by the parties consisted of a printed form, a typewritten rider and handwritten notations. In addition to a disclaimer and merger clause contained in the printed form, paragraph 8 of the rider further provided: "Purchaser has inspected the premises or caused an inspection thereof to be made on the purchaser's behalf, and it is agreed and understood that neither seller nor any person purporting to act for the seller has made or now makes any representations as to the physical condition, income, expense, operation or any other matter or thing affecting or relating to the premises, except as herein specifically set forth. Purchaser hereby expressly acknowledges that no representations have been made and the Purchaser further agrees to take the premises 'as is.' Purchaser agrees that the seller is not liable or bound in any manner by any financial statements or written agreements or statements, or representations which

have been made by Seller, principal or agents of Seller * * * unless the same are specifically stated herein. It is understood and agreed that all understandings and agreements heretofore had between the parties hereto, are hereby merged in this agreement, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representations made by the Seller or the Purchaser, not embodied in this agreement."

A general, vague merger clause is ineffective to bar parol evidence from being introduced to prove fraud in inducing a contract *(Danann Realty Corp. v Harris,* 5 NY2d 317; *Sabo v Delman,* 3 NY2d 155). However, where the person alleging fraud specifically disclaims reliance upon oral representations, parol evidence is inadmissible. *(Citibank v Plapinger,* 66 NY2d 90, *rearg denied* 67 NY2d 647; *Hi Tor Indus. Park v Chemical Bank,* 114 AD2d 838.)

The language employed in the parties' contract constituted a specific disclaimer as distinguished from a general merger clause. The principals of the plaintiff, experienced real estate investors, negotiated the terms of the contract with the aid of counsel *(Citibank v Plapinger, supra)* and stipulated that they were not relying on any representations as to personalty, the subject as to which they now claim they were defrauded *(Danann Realty Corp. v Harris, supra).* Additional language employed in the rider of the contract negates the plaintiff's claim that it relied on the existence of personalty when it signed the contract: "The sale also includes all personal property, *if any* * * * and Seller specifically disclaims any warranty * * * and Purchaser agrees to take same 'as is' " (emphasis added).

The combined merger and disclaimer clause also recited that the "[p]urchaser has inspected the premises or caused an inspection thereof". Had the plaintiff insisted upon making an inspection of the interior of the premises prior to signing the contract, the presence or absence of the expected personalty or fixtures would have been readily apparent as it was when Mr. Meisels visited the premises after signing the contract and decided that it would not be economically feasible to rehabilitate the property.

Since the plaintiff stipulated in the contract that it was not relying upon any representations "as to the very matter as to which it now claims it was defrauded", such specific disclaimer destroys the allegations in the plaintiff's complaint

that the agreement was executed in reliance upon the defendant's oral representations *(Danann Realty Corp. v Harris, supra)*.

In light of the foregoing, we do not reach the defendant's remaining contention. Concur—Sullivan, J. P., Carro, Rosenberger, Kupferman and Rubin, JJ.