Michael **O'HEARN** and Melinda Midajah O'Hearn, Plaintiffs,

v.

**BODYONICS, LTD.,** Great Earth Companies, Inc., and Phoenix Laboratories, Inc., Defendants.

No. 98 CV 1168(ADS).

United States District Court, E.D. New York.

Oct. 12, 1998.

**8**

Dewey, Pegno & Kramarsky, LLP, New York, NY (David S. Pegno, of Counsel), Kendig & Ross, Los Angeles, CA, for Plaintiffs, Michael O'Hearn and Melinda Midajah O'Hearn.

Hoffinger, Friedland, Dobrish, Bernfeld & Stern, P.C., New York, NY (Philip S. Ross, of Counsel), for Defendants Bodyonics, Ltd., Great Earth Companies, Inc., and Phoenix Laboratories, Inc.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This diversity, breach of contract lawsuit arises out of two written contracts between the defendants, Bodyonics, Inc., Great Earth Companies, Inc. and Phoenix Laboratories, Inc. (collectively, "Bodyonics" or the "defendants"), and the plaintiffs, Michael O'Hearn and Melinda Midajah O'Hearn ("the O'Hearns" or "the plaintiffs"), professional body builders and fitness models who the defendants hired to endorse and promote their products. At issue is the O'Hearns' motion to dismiss the defendants' counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of the Civil Procedure. The defendants' counterclaims include: breach of contract (first and second counterclaims); breach of the implied covenant of good faith and fair dealing (third and fourth counterclaims); breach of fiduciary duty (fifth and sixth counterclaims); and contract rescission based on the O'Hearns' alleged oral misrepresentations (seventh and eighth counterclaims).

Familiarity with all prior opinions is presumed and will not be reiterated.

## I. BACKGROUND

The following facts are derived from the pleadings and contracts at issue; except where indicated otherwise, they are not in dispute.

The O'Hearns, a married couple residing in California, are accomplished body builders and fitness models. Michael O'Hearn has garnered numerous honors, most recently, the "Mr. Natural Universe" title in December 1997. Mr. O'Hearn's wife, Melinda Midajah O'Hearn, is primarily employed as a professional fitness model.

The defendants are Delaware corporations with principal places of business in Hicksville, New York, and are engaged in the businesses of manufacturing, distributing, marketing and selling vitamins and nutritional supplements throughout the United States. .

Bodyonics entered into two separate, virtually identical contracts, one with each of the O'Hearns. Both agreements provided for a two-year term, beginning on April 1, 1997. By the terms of these contracts, the O'Hearns agreed to endorse and promote Bodyonics' products by, among other things, making personal appearances at power lifting shows and other public events. The O'Hearns also agreed to permit Bodyonics to use their names, signatures and photographs in connection with the marketing, promotion, advertisement and sale of its products. In exchange for these services, Bodyonics agreed to pay Mr. and Mrs. O'Hearn monthly base compensations of $6,000.00 and $1,000.00 a month, respectively, payable on the first day of the month. Bodyonics also promised to pay Mr. O'Hearn an amount equal to 2% of its gross sales, payable quarterly, for the duration of the contracts. The contracts further required Bodyonics to provide the O'Hearns with vitamins and nutritional products for their "personal use."

The contracts contained a termination clause, which provided that Bodyonics could unilaterally terminate the contracts for "just cause," which included circumstances where the O'Hearns: (1) were charged with or convicted of a crime or violation; (2) suffered from severe physical or mental incapacity that rendered them unable to perform their duties under the contracts; or (3) became involved in any actual or alleged conduct, act or omission that would, in the reasonable judgment of Bodyonics, adversely affect Mr. O'Hearn's reputation as a power lifter, or Mrs. O'Hearn's reputation as a fitness model, or render their continued endorsements unsuitable.

Finally, the contracts allowed for a six month "run-off" period, during which time Bodyonics could continue the "approved use of any printed, audio, film or video material of every description originally produced during the term, or as the term may have been extended" after the completion of the two-year term.

By a summons and complaint filed on February 17, 1998, the plaintiffs initiated this lawsuit against the defendants, alleging a single cause of action for breach of contract. According to the complaint, the O'Hearns performed all of their obligations under their contracts, while Bodyonics repeatedly breached the agreements by making inadequate and late payments, failing to supply the required substantiation of quarterly sales, and sending a series of letters, beginning January 7, 1998, demanding termination of the contracts.

In an answer filed on March 5, 1998, the defendants asserted counterclaims against the O'Hearns for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. Thereafter, the O'Hearns evidently served an amended complaint on the defendants, containing three additional claims: an alleged violation of New York Civil Rights Law § 51; an alleged violation of the Lanham Act § 43(a); and unfair competition.

The defendants' amended answer contains the original counterclaims and two additional ones. The first and second counterclaims, for breach of contract against Michael and Melinda O'Hearn, respectively, allege that the O'Hearns failed to appear at scheduled appearances, arrived late to or left early from other appearances, and refused to honor the defendants' request that they make certain appearances. In addition, the breach of contract counterclaims allege that the O'Hearns sold photographs of themselves at trade shows without the defendants' permission, and allowed their photographs to appear in magazines, such as "Muscle and Fitness," and "Iron Man" without the defendants' permission, without endorsing the defendants' products and for their own economic benefit. The breach of contract counterclaims also allege that the O'Hearns sold the products provided to them for "personal use."

As noted above, the third and fourth counterclaims are for breach of the implied covenant of good faith. These claims allege that the O'Hearns acted in bad faith when they refused to attend certain promotional events on behalf of Bodyonics for the proffered reason that it conflicted with their training for various competitions and other obligations.

The fifth and sixth counterclaims are for breach of fiduciary duty. These counterclaims stem from the defendants' allegations regarding the O'Hearns' selling of products that Bodyonics provided to them for their "personal use," and "permit[ting] [their] likeness to be used to promote the products of competitors of Bodyonics."

The seventh and eighth counterclaims, for contract rescission, center on Bodyonics' contention that the O'Hearns "fraudulently induced Defendants to enter into the ... Agreement[s] by falsely representing to Defendants [their] year round availability to attend trade shows, store openings and other events as Defendants might designate.... [the O'Hearns] assured Defendants of [their] year round availability and Defendants relied on such assurances since such availability was fundamental to [their] performance of the .... Agreement[s]."

## II. DISCUSSION

### A. Standard of Review: The Plaintiffs' 12(b)(6) Motion to Dismiss the Defendants' Counterclaims

On a motion to dismiss for failure to state a claim, the Court should dismiss the counterclaims pursuant to Rule 12(b)(6) if "it appears beyond doubt that the defendants can prove no set of facts in support of their counterclaims which would entitle them to relief." *S.E.C. v. U.S. Environmental, Inc.,* 155 F.3d 107 (2d Cir.1998); *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41 (2d Cir.1997)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957] ). It is not the Court's function to weigh the evidence that might be presented at a trial; instead, the Court must merely determine whether the counterclaims are legally sufficient. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Thus, the Court must accept the allegations of the counterclaims as true, and construe all reasonable inferences in favor of the defendants. *Connell v. Signoracci,* 153 F.3d 74 (2d Cir. 1998); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d

Cir.1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991).

The Court is mindful that under the modern rules of pleading, a defendant asserting a counterclaim need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice", Fed. R.Civ.P. 8(f). The issue before the Court on a Rule 12(b)(6) motion "is not whether a [defendant] will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14, (1996). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995)(quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 [2d Cir. 1976][per curiam] ).

"In considering a motion to dismiss for failure to state a claim under · Fed. R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint [and answer] as exhibits or incorporated ... by reference." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir.1996)(quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 [2d Cir. 1991] ); *Paulemon v. Tobin*, 30 F.3d ·307, 308–09 (2d Cir.1994). Here, the Court will consider the written contracts between the parties, in addition to the facts stated in the pleadings, since the complaint and answer incorporate the contracts by reference.

It is under these standards that the Court will review the plaintiffs' motions with respect to each of the counterclaims.

## B. Breach of Contract: The First and Second Counterclaims

The plaintiffs expend great effort advancing various theories why the counterclaims for breach of contract should be dismissed, only to concede that "their motion does not seek dismissal of that portion of the First and Second Counterclaims" which allege that the "O'Hearns failed to appear at certain (unspecified) scheduled appearances and arrived late for or left early from others." (Plaintiff's Memorandum of Law, at 12).

Given that the plaintiffs' motion does not attack at least one theory supporting the defendants' breach of contract counterclaims, the Court cannot conclude that "it appears beyond doubt that the defendants can prove no set of facts in support of their [first and second] counterclaims which would entitle them to relief." *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41 (quoting *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99). Simply stated, the Court cannot dismiss these causes of action for breach of contract where the plaintiffs do not dispute that the defendants have pleaded counterclaims that are legally sufficient in at least one respect. · Regardless, in the Court's view, the counterclaims sufficiently plead a cause of action for breach of contract.

For these reasons, the plaintiffs' motion to dismiss the first and second counterclaims is denied.

## C. Breach of the Implied Covenant of Good Faith Dealing: Third and Fourth Counterclaims

The defendants' third and fourth counterclaims sound in breach of the implied covenant of good faith dealing, which precludes a party from engaging in conduct that will deprive the other contracting party of his or her benefits under the contract.

Although not raised by either party, the Court observes that under New York Law, which the parties agree applies to this action in diversity, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim; these claims must be dismissed, as a matter of law, as redundant. "[P]arties to an express ·contract are bound by an implied duty of good faith, but breach of that duty is merely a, breach of the underlying contract." *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992) (citation and internal quotation marks omitted). Accordingly, the third and fourth coun-

terclaims for breach of the implied covenant of good faith and fair dealing must be dismissed as duplicative. *See Village on Canon v. Bankers Trust Co.*, 920 F.Supp. 520, 534 (S.D.N.Y.1996)(breach of good faith and fair dealing claim does not provide independent basis for recovery); *Canstar v. J.A. Jones Constr. Co.*, 212 A.D.2d 452, 622 N.Y.S.2d 730, 731 (1st Dept.1995) (dismissing claim for breach of covenant of good faith and fair dealing as "extrinsically tied to the damages allegedly resulting from a breach of contract").

### D. Breach of Fiduciary Duty: the Fifth and Sixth Counterclaims

The defendants' fifth and sixth counterclaims are for breach of fiduciary duty. As stated in their amended answer, these defendants allege that

> Pursuant to Article 2.6 of the [agreements], Bodyonics agreed to provide [the O'Hearns] with " . . . a reasonable quantity of products for . . . personal use."
>
> Michael O'Hearn together with Melinda O'Hearn increased their request for a reasonable quantity of the product for personal use from a quantity with a wholesale price value of less than $750.00 per month to a quantity of product with a retail price value of more than $ 10,000 per month.
>
> Upon information and belief, Michael [and Melinda] O'Hearn did not use the products [they] ordered for personal use but either gave the product to third parties or sold the product to the third parties for [their] own economic benefit and without the authorizations of the defendants.
>
> As a result of the above, [the O'Hearns] breached [their] common law duties and fiduciary obligations to Defendants.

(Defendant's Amended Answer, at ¶¶ 103–120)(paragraph numbering omitted).

To prove a claim for breach of fiduciary duty, the defendants must demonstrate: (1) the existence of a fiduciary relationship between the parties; and (2) a breach of the fiduciary duty. *See CFSC Capital Corp. XXVII v. W.J. Bachman Mechanical Sheet Metal Co., Inc.*, 247 A.D.2d 502, 669 N.Y.S.2d 329 (2d Dept.1998)(discussing elements).

In the Court's view, the defendants, as a matter of law, have not adequately pleaded the existence of a fiduciary relationship between the parties. Under New York law, an arms-length commercial transaction generally does not give rise to a fiduciary relationship, even if the defendants have relied on the plaintiffs' contractual obligation to use their "best efforts" to promote Bodyonics' products. *See Rogers v. HSN Direct Joint Venture*, No. 97 Civ. 7710, 1998 WL 566804, *3 (S.D.N.Y. Sept. 4, 1998)(citing *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 33 A.D.2d 766, 766, 306 N.Y.S.2d 599, 600 [1st Dept.1969][since parties' relationship was "purely commercial," no fiduciary relationship existed; defendant's failure to use its best efforts "more properly may be considered an action for breach of contract"], *aff'd*, 30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329 [1972] ); *see also Liebowitz v. Elsevier Science Ltd.*, 927 F.Supp. 688, 711 (S.D.N.Y.1996)(duty owed by publisher to author and licensee to licensor normally is not a fiduciary duty, but rather "the usual implied-in-law duty of good faith and fair dealing imposed on parties to any contract").

Here, the defendants are corporations which were represented by counsel while negotiating the agreements. Their counterclaims against the O'Hearns for breach of fiduciary duty fails because "there is no basis for inferring that the trust and confidence [Bodyonics] reposed in [the O'Hearns] was anything more than the type parties normally seek before entering an arms-length transaction, and there is no basis for concluding that the transaction was not made at arms length." *Rogers v. HSN Direct Joint Venture*, No. 97 Civ. 7710, 1998 WL 566804, *3 (S.D.N.Y. Sept. 4, 1998).

Even if the Court were to find that the defendants adequately pleaded the existence of a fiduciary relationship, the Court nevertheless would grant the motion to dismiss on an entirely distinct ground not addressed by either party—namely, that the counterclaims for breach of fiduciary duty are based upon the same allegations contained in the first and second counterclaims to recover damages for breach of contract. *Layden v. Boc-*

*cio,* —— N.Y.S.2d ——, 1998 N.Y. Slip Op. 07559, 1998 WL 554212, \*1 (2d Dept. August 31, 1998). "Since the defendants are not alleging tort liability or a breach of a duty distinct from, or in addition to the breach of contract claim, these causes of action should be dismissed." *Standardbred Owners Association, Inc. v. Yonkers Racing Corporation,* 209 A.D.2d 507, 508, 619 N.Y.S.2d 613 (2d Dept.1994)(dismissing breach of fiduciary duty claim) (citations omitted).

Accordingly, the plaintiffs' motion to dismiss the fifth and sixth counterclaims is granted.

### E. Contract Rescission: The Seventh and Eighth Counterclaims

As previously stated, the seventh and eighth counterclaims, for rescission with respect to Michael and Melinda O'Hearn, respectively, center on Bodyonics' contention that the O'Hearns "fraudulently induced Defendants to enter into the ...Agreement[s] by falsely representing to Defendants [their] year round availability to attend trade shows, store openings and other events."

The plaintiffs argue that this counterclaim is based entirely on the O'Hearns' alleged extra-contractual, fraudulent oral representations, and as such is barred by the parole evidence rule. In this regard, the plaintiffs' principal argument is that the defendants' contention of fraudulent misrepresentations is undermined by the general merger clauses in each of the contracts, both of which provide in identical language:

> This Agreement sets forth the entire agreement and understanding of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements, and arrangements and understandings, written or oral, between the parties hereto. No representation, promise or inducement has been made by either party hereto that is not embodied in this Agreement and neither party shall be bound by or liable for any alleged representation, promise or inducement not set forth herein.

■■■ The parol evidence rule bars proof of prior oral statements offered to re-

fute the unambiguous terms of a written, integrated contract. *Marine Midland Bank–Southern v. Thurlow,* 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 419–20, 425 N.E.2d 805 (1981). Generally, however, this contract law principle does not exclude a claim of fraud, which can rarely be substantiated without invoking extrinsic evidence. *Chace v. Bankers Trust Co.,* 89 Civ. 4497, 1990 WL 250181, at \*3 (S.D.N.Y. Dec.26, 1990). Parol evidence is admissible to prove fraud even if the disputed contract contains a standard merger clause stating that the signatories acknowledge the written document supersedes all prior agreements and constitutes the sole embodiment of their obligations. *Jones v. Ballon, Stoll & Itzler,* 88 Civ. 8459, 1990 WL 113120, at \* 8 (S.D.N.Y. July 27, 1990)(citing *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 321, 157 N.E.2d 597, 184 N.Y.S.2d 599, 601 [1959] ). By contrast, a specific disclaimer denying reliance on certain oral representations can render parol evidence inadmissible even to substantiate a claim of fraud. *Danann Realty,* 5 N.Y.2d at 320–321, 184 N.Y.S.2d at 599, 157 N.E.2d 597, the leading New York case, explained that a specific disclaimer "destroys the allegations ... that the agreement was executed in reliance upon ... contrary oral representations."

A specific disclaimer typically consists of a clause stipulating that the parties are not "relying" upon specified, extra-contractual representations. *Danann Realty Corp.,* 5 N.Y.2d at 320, 184 N.Y.S.2d at 601, 157 N.E.2d 597 (contract provided "neither party [is] relying upon any statement or representation not embodied in this contract"); *Mahn Real Estate Corp. v. Shapolsky,* 178 A.D.2d 383, 385, 577 N.Y.S.2d 824, 826 (1st Dept. 1991) (plaintiff specifically acknowledged no reliance on any representation regarding subject matter of the claimed fraud).

*Danann* was an action by the purchaser of a lease which claimed that it had contracted to buy the lease in reliance on fraudulent misrepresentations by the seller as to the operating expenses and profits of the building. The contract of sale provided that all prior agreements and understandings were merged in the contract, that neither party

relied upon any statements not set forth therein, and that the seller had not made any representations as to the expenses or operation of the premises. The New York Court of Appeals held that these specific disclaimers of representations of the sort upon which the plaintiff allegedly relied precluded assertion of the fraud claim, although it observed that a general and vague merger clause would not have done so. *Danann*, 5 N.Y.2d at 320–21, 184 N.Y.S.2d at 602, 157 N.E.2d at 601.

In the seminal case of *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985), the Court of Appeals considered the application of *Danann* to a negotiated guarantee by sophisticated corporate officers of a multimillion dollar debt of the corporation. The guarantee recited that it was "absolute and unconditional" notwithstanding "(i) any lack of validity . . . of the . . . [guaranteed] Loan Agreement . . . or any other agreement or instrument relating thereto" or "(vii) any other circumstances which might otherwise constitute a defense" to the guarantee. *Plapinger*, 66 N.Y.2d at 94, 495 N.Y.S.2d at 312, 485 N.E.2d 974. Noting that *Danann* had been sharply criticized and that *Plapinger* did not involve "generalized boilerplate," the Court of Appeals held that the fraud defense had been waived:

> Though not the explicit disclaimer present in *Danann*, the substance of defendants' guarantee forecloses their reliance on the claim that they were fraudulently inducted to sign the guarantee by the banks' oral promise of an additional line of credit. To permit that would in effect condone defendants' own fraud in 'deliberately misrepresenting [their] true intention' (*Danann Realty Corp. v. Harris*, 5 N.Y.2d at p. 323, 184 N.Y.S.2d 599, 157 N.E.2d 597) when putting their signatures to their 'absolute and unconditional' guarantee.

66 N.Y.2d at 94, 495 N.Y.S.2d at 312, 485 N.E.2d at 977.

The Second Circuit conducted an exhaustive overview of the above New York caselaw in *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310 (2d Cir.1993). In *Yanakas*, the Second Circuit concluded that the guarantee at issue was subject to attack, despite a clause stating that the guarantee was "absolute and unconditional." First, it was contained in a preprinted form that the Second Circuit characterized as "generalized boilerplate." *Id.* at 317. Second, and in the Court's view, more important, it did "not purport to waive defenses to its own validity." *Id.* As the Second Circuit put it, the guarantee "contains no disclaimer as to the validity, regularity, or enforceability of the Guarantee itself. It also contains no disclaimer of the existence of or reliance upon representations by MHT, no express reference to any promise of continued financing, and no blanket disclaimer of the type found in *Plapinger* as to 'any other circumstances which might otherwise constitute a defense' to the Guarantee." *Id.*

■ Applying these principals here, the Court concludes that dismissal of the defendants' counterclaim for rescission is inappropriate, at least at this early stage of the proceedings. It is true that the first factor considered in *Yanakas* would weigh against such a conclusion, as it does not appear that this merger clause was contained in a preprinted form that could be characterized as "generalized boilerplate" (*id.* at 317). However, the second, more important factor, weighs heavily in favor of such a finding: the merger clause did "not purport to waive defenses to its own validity." *Id.* It "contains no disclaimer as to the validity, regularity, or enforceability of the Guarantee itself." *Id.* Significantly, moreover, it does not include a blanket disclaimer of the type found in *Plapinger* as to "any other circumstances which might otherwise constitute a defense or counterclaim." *Id.*

The Court also is not persuaded by the plaintiffs' other contention—that their alleged misrepresentations concerning their "year round" availability are "flatly" contradicted by the language of the agreements. The agreements, according to the plaintiffs, implicitly acknowledge that the O'Hearns would not be available year round by noting that the O'Hearns would "compete[ ] in national, state and local bodybuilding competitions" and that Mrs. O'Hearn also would compete in fitness competitions. The plaintiffs also point out that the contracts do not

expressly require their "year round" availability; rather, the contracts required them to "make every good faith effort to attend and work full time in a booth maintained by Bodyonics at trade shows or other events designated by Bodyonics ... [and] to regularly attend store openings ... to promote the sale of [the defendants' product] .... Bodyonics shall provide [the] O'Hearns at least sixty (60) days prior written notice of the dates of such events." (¶ 1.5 of the respective agreements). While the plaintiffs' arguments have some force, the Court does not agree that the cited contract provisions "flatly" contradict Bodyonics' counterclaims; they do not, for example, expressly state that "year round" availability is not required, or that the O'Hearns made no representations concerning their "year round" availability.

For the foregoing reasons, the plaintiffs' motion to dismiss the seventh and eighth counterclaims is denied.

### F. The Defendants' Motion for Leave to File a Second Amended Answer: The Rule 15(a) Standard

In their Memorandum of Law in Opposition to the Plaintiffs' Motion to Dismiss, the defendants request leave to file a Second Amended Answer in the event the Court dismisses any or all of their counterclaims. Since the Court has granted the plaintiffs' motion to dismiss the defendants' third, fourth, fifth and sixth counterclaims, the Court will address the defendants' motion for leave to amend.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). Nevertheless, leave to amend is not granted automatically or reflexively. The Supreme Court stated in the seminal case of *Foman v. Davis* that denial of a Rule 15(a) motion may be appropriate in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of the amendment ...." Foman v. Davis,* 371 U.S.

178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)(emphasis added); *accord Hemphill v. Schott,* 141 F.3d 412, 420 (2d Cir.1998); *Zahra,* 48 F.3d at 685; *Block,* 988 F.2d at 350; *Ruffolo v. Oppenheimer & Company,* 987 F.2d 129, 131 (2d Cir.1993).

Applying the standards set forth in *Foman* and its progeny, the Court finds that any amendments to the answer would be futile, for the reasons stated above in the discussion addressing each of the counterclaims. For this reason, the defendants' motion for leave to file a Second Amended Answer is denied.

### III. CONCLUSION

Having reviewed the parties' submissions and afforded counsel the opportunity to present oral argument, it is hereby

**ORDERED,** that the plaintiffs' motion to dismiss the first, second, seventh and eighth counterclaims is denied; and it is further

**ORDERED,** the plaintiffs' motion to dismiss the third, fourth, fifth and sixth counterclaims is granted; and it is further

**ORDERED,** that the defendants' motion for leave to file a Second Amended Answer is denied.

**SO ORDERED.**