**DESIGNERS NORTH CARPET, INC., Plaintiff,**

v.

**MOHAWK INDUSTRIES, INC., Defendant.**

No. CV01–0053(ADS).

United States District Court, E.D. New York.

July 17, 2001.

194

Martin Silver by Martin Silver, Hauppauge, NY, for Plaintiff.

Alston & Bird, LLP (N.Y.) by Stephen S. Hart, New York City, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of claims by Designers North Carpet, Inc. ("Designers" or the "plaintiff") that Mohawk Industries, Inc. ("Mohawk" or the "defendant") acted in bad faith and breached the covenant of good faith and fair dealing and, therefore, violated alleged agreements between the companies. The plaintiff also claims that the defendant violated section 349 of the New York General Business Law ("NYGBL"). Presently before the Court is a motion by Mohawk to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P.").

## I. BACKGROUND

The following facts are taken from the complaint. Designers has been a retail carpet dealer for the past 17 years, during which time it carried and sold two lines of carpets manufactured by Mohawk. Designers sold Mohawk's "Helios" line for 15 years and the "Karastan" line for 10 years. The Helios and Karastan lines are unique in terms of their style and the manner in which they are manufactured. According to the plaintiff, no other manufacturer can duplicate the defendant's products. As a result of the unique quality of the carpets, the Helios and Karastan lines are generally sold at a greater profit than carpets manufactured by other companies. In addition, Mohawk has limited the number of retail carpet dealers to whom it will sell its Karastan and Helios carpets, which the plaintiff contends has led to a lack of competitive pricing.

Throughout their business relationship, Designers purchased a large number of carpets from Mohawk, and its sales of Helios and Karastan carpets represented a substantial portion of its total sales. Designers always paid for the Helios and Karastan carpets in a timely fashion.

In reliance on Mohawk's representations that it would continue to supply the plaintiff with Helios and Karastan carpets, the plaintiff invested substantial sums of money to promote those products. In particular, the plaintiff bought sample carpets and

displays and leased space to show the carpets. Mohawk demanded that Designers stop carrying certain other carpets, because such sales would adversely affect the sale of the defendant's Karastan and Helios products. Designers agreed to do so based upon the express and implied representations of Mohawk's agents that Designers could continue selling Helios and Karastan carpets and their business relationship "would not be terminated without cause" (Complaint ¶ 21).

As it had done in the past, in the summer of 2000, at the manufacturer's request, Designers purchased a large quantity of sample Karastan carpets from Mohawk. On August 8, 2000, Mohawk notified Designers that as of September 8, 2000, Mohawk would no longer provide Designers with Karastan or Helios carpets, because Designers had not been selling enough Karastan carpets. Designers protested that its sales volume had generally remained constant over many years. A Mohawk agent allegedly acknowledged the truth of that statement and said that the decision to stop supplying Designers with Karastan and Helios carpets was simply a "business decision." Designers asked for the basis of the defendant's "business decision" and also asked why Mohawk had not given the plaintiff prior notice of its intent to stop supplying Designers with the carpets. Allegedly, the defendant did not answer the plaintiff's inquiries.

In the complaint, the plaintiff alleges that the defendant's decision to stop selling Karastan and Helios carpets to Designers was not a "business decision" and was an attempt to placate other dealers of Karastan carpets. The plaintiff further alleges that agreements existed between Designers and Mohawk by the terms of which Designers purchased carpets, samples, and displays from Mohawk. According to the plaintiff, these agreements are subject to the provisions of the Uniform Commercial Code ("UCC"), and therefore, the defendant was obligated to exercise good faith and fair dealing in the performance of the agreements. Designers further claims that Mohawk's decision to stop selling Helios and Karastan carpets to Designers on 30 days notice, without just cause and based upon the false reason of diminished sales, constitutes an act of bad faith and a breach of the obligation to exercise good faith and fair dealing. The plaintiff claims that because the defendant committed an act of bad faith and breached its obligation to exercise good faith and fair dealing, it violated agreements it had with the plaintiff.

The plaintiff commenced this action on October 19, 2000. The complaint sets forth three causes of action. The first cause of action alleges breach of contract and breach of the obligation to exercise good faith and fair dealing and seeks actual monetary damages as well as incidental and consequential damages. The second cause of action alleges the same conduct but requests an order directing Mohawk to continue to supply Designers with Helios and Karastan carpets and preventing the defendant from refusing to supply the carpets without just cause. As a third cause of action, the plaintiff claims that the defendant's conduct violates section 349 of the NYGBL and seeks actual damages plus attorneys' fees as well as an injunction.

Presently before the Court is a motion by Mohawk to dismiss the complaint pursuant to Fed.R.Civ.P 12(b)(6) for failure to state a claim. The defendant advances the following arguments in support of its motion: (1) the plaintiff's first cause of action should be dismissed because it alleges only a breach of an independent duty of good faith, without alleging any breach of con-

tract; (2) the plaintiff's second cause of action should be dismissed because it differs from the first only in the remedy sought; and (3) plaintiff's third cause of action should be dismissed because plaintiff has failed to allege the elements necessary to support a claim under section 349 of the NYGBL.

## II. *DISCUSSION*

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their complaint which would entitle them to relief. *See King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The Court must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

### A. As to the First Cause of Action

 Under New York law, every contract contains an implied covenant of good faith and fair dealing. This covenant includes an implied undertaking on the part of each party to the contract that each will not intentionally or purposely do anything to prevent the other party from carrying out the agreement on his part. *See Gelder Medical Group v. Webber*, 41 N.Y.2d 680, 684, 394 N.Y.S.2d 867, 871, 363 N.E.2d 573 (1977). A failure to act in good faith as to a material part of the agreement could be considered a material breach of the agreement. Stated otherwise, the implied covenant of good faith means that neither party to the contract shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the benefit of the contract. *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979, 663 N.E.2d 289 (1995). However, this implied covenant of good faith does not extend so far as to interfere with a party's general right to act in its own interests in a way that may incidentally lessen or affect the other party's expectation from the contract. *M/A-COM Security Corp. v. Galesi*, 904 F.2d 134 (2d Cir.1990).

Here, Mohawk moves to dismiss the first cause of action on the ground that the plaintiff alleged a breach of the implied duty to exercise good faith and fair dealing but did not allege the existence of a contract or a breach of such contract. Mohawk argues that under New York law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim. Therefore, asserts Mohawk, Designers' first cause of action for breach of the implied obligation to exercise good faith and fair dealing must be dismissed, because the claim cannot stand independently from a claim for breach of contract, which Mohawk contends is not present here.

On the other hand, Designers claims that it alleged the existence of agreements in paragraphs 31 through 33 of the com-

plaint and a violation of those agreements in paragraphs 34 through 36. According to the plaintiff, its allegation of agreements made and a breach by the defendant is sufficient to defeat the defendant's motion to dismiss.

A claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action that is separate and different from a breach of contract claim. *See O'Hearn v. Bodyonics, Ltd.,* 22 F.Supp.2d 7, 11 (E.D.N.Y. 1998). Rather, breach of that duty is merely a breach of the underlying contract. *See Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir.1992). Accordingly, if the first cause of action alleges only a breach of an implied duty of good faith and fair dealing, and not a breach of contract, that cause of action must be dismissed. *See Fasolino Foods,* 961 F.2d at 1056; *O'Hearn,* 22 F.Supp.2d at 11.

To state a claim for breach of contract under New York law, a complaint need only allege: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996). The Court notes that the breach of contract claim as pleaded in the complaint is vague and conclusory and, at best, inartfully drafted. Indeed, the plaintiff does not describe the contract or contracts other than to say agreements existed between it and Mohawk. The plaintiff does not allege whether these agreements are written or oral, when they were made, the length of time they covered, the quantity of carpets involved, or any other terms. Indeed, discovery and summary judgment motions may determine that no agreements or contracts existed.

However, reading the complaint liberally and drawing all inferences in favor of the plaintiff, *see Koppel,* 167 F.3d at 127; *Connell v. Signoracci,* 153 F.3d 74, 80 (2d Cir.1998), the Court finds that at this stage, the complaint provides the short and plain statement that Fed.R.Civ.P. 8 requires to provide notice of the ground upon which relief is sought. *See Bridgeway Corp. v. Citibank, N.A.,* 132 F.Supp.2d 297, 304 (S.D.N.Y.2001) (denying motion to dismiss a contract claim where the plaintiff provided a "short and plain statement" of the existence of an agreement, performance by the plaintiff, breach of the agreement by the defendant, and damages). The complaint identifies agreements between Designers and Mohawk by the terms of which Mohawk sold its Helios and Karastan carpets and associated products to Designers, who then sold the carpets to consumers; that Designers stopped selling carpets from certain other manufacturers whose products would compete with those of Mohawk; and that Mohawk advised Designers that it would continue to supply Designers with its unique products in the future.

The complaint also alleges performance by the plaintiff, in that the plaintiff promoted and sold the defendant's carpets; "invested substantial sums of time and money" advertising the defendant's carpets; and as recently as the summer of 2000, purchased a large quantity of sample carpets from the defendant, at its request. The complaint further alleges that the defendant breached their agreements by refusing to continue supplying the plaintiff with Helios and Karastan carpets and failing to provide just cause or a basis for that decision. In addition, the complaint alleges actual monetary, incidental and consequential damages as a result of the breach.

Accepting the plaintiff's factual allegations as true and drawing all inferences in

its favor, the Court finds that Designers has shown that it has sufficiently pleaded a first cause of action for breach of contract as well as breach of the implied covenants of good faith and fair dealing. For these reasons, the Court denies Mohawk's Rule 12(b)(6) motion with regard to the plaintiff's first cause of action.

### B. As to the Second Cause of Action

The Court notes that the second cause of action is identical to the first in every respect except for the relief requested. In its first cause of action, Designers requests "actual monetary damage along with incidental and consequential damages;" and it requests injunctive relief in its second cause of action. Although the plaintiff has separately entitled a "second cause of action," it actually is a request for additional relief based on the facts set forth in the first cause of action. For the sake of clarity, the Court will incorporate Designers' request for injunctive relief into the first cause of action. Because no real separate "second cause of action" exists, it is dismissed.

### C. As to the Third Cause of Action

■ Mohawk also moves to dismiss Designers' third cause of action, which alleges that the defendant engaged in deceptive trade practices in violation of NYGBL section 349. To successfully state a violation of section 349, a plaintiff must allege that the defendant's conduct is consumer-oriented, which is defined as conduct that could affect similarly situated customers. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25–26, 623 N.Y.S.2d 529, 532–33, 647 N.E.2d 741 (1995); see also MaGee v. Paul Revere Life Ins. Co., 954 F.Supp. 582, 586 (E.D.N.Y.1997) (holding that the injury alleged must be to the public generally as opposed to the plaintiff alone). Al-

though the plaintiff is not required to allege a pattern of conduct or repetitive deceptive trade practices, it must allege "a broader impact on consumers at large." Id. at 25, 623 N.Y.S.2d at 532, 647 N.E.2d 741. Furthermore, it is well established that private contract disputes, which are unique to the parties in the lawsuit are not protected by section 349. Id.; see New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). In addition to alleging that the defendant's conduct was consumer-oriented, the plaintiff must also allege that the conduct was misleading or dishonest in a material respect, and that it caused an injury to the plaintiff. See Oswego Laborers', 85 N.Y.2d at 25, 623 N.Y.S.2d at 532, 647 N.E.2d 741.

■ Here, Designers fails to allege facts sufficient to establish that Mohawk's conduct was consumer-oriented. The only statement that the plaintiff makes which even suggests that Mohawk's conduct affected similarly situated customers is that the "unlawful actions of the defendant have caused damage and injury to both the plaintiff herein and to its consumer customers." This conclusory assertion is insufficient. See Allahabi v. New York Life Ins. Co., 1999 WL 126442 *2 (S.D.N.Y. March 10, 1999) (holding that a conclusory assertion of consumer-oriented conduct should be disregarded); see, e.g., In re American Express Co. Shareholder Litig., 39 F.3d 395, 400–01 n. 3 (2d Cir.1994) ("[C]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss.").

As Designers offers no other factual allegation that Mohawk's allegedly improper actions were consumer-oriented, this case is clearly a private contract dispute that is unique to the parties and does not fall within the ambit of section 349. See Oswe-

*go,* 85 N.Y.2d at 25, 623 N.Y.S.2d at 532, 647 N.E.2d 741; *New York Univ.,* 87 N.Y.2d at 320, 639 N.Y.S.2d at 283, 662 N.E.2d 763. Accordingly, the defendant's motion to dismiss the third cause of action is granted.

## III. CONCLUSION

Having reviewed the submissions of the parties, it is hereby

**ORDERED,** that the defendant's motion to dismiss the first cause of action in the complaint is **DENIED;** and it is further

**ORDERED,** that the plaintiff's request for injunctive relief as alleged in the second cause of action is consolidated in the first cause of action, and the second cause of action is dismissed; and it is further

**ORDERED,** that the defendant's motion to dismiss the third cause of action is **GRANTED;** and it is further

**ORDERED,** that the parties are directed to report to United States Magistrate Judge E. Thomas Boyle to proceed with discovery forthwith.

**SO ORDERED.**