**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1230n.06

**No. 11-3703**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 28, 2012*

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JOSEPH J. KORFF, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| HILTON RESORTS CORPORATION, | ) | STATES DISTRICT COURT FOR |
| d/b/a HILTON GRAND VACATIONS, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant - Appellee. | ) | |

Before:       CLAY and SUTTON, Circuit Judges; and RICE, District Judge.[*]

RICE, District Judge.  Joseph Korff appeals from the district court's order granting Hilton Resorts Corporation's  motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Korff maintains that he was fraudulently induced to purchase a timeshare plan based on oral representations made by a Hilton Resorts salesperson.  The district court held that because the timeshare contract contained a specific merger clause disclaiming all oral representations of any salesperson, extrinsic evidence of those statements was inadmissible under New York law, and that Korff therefore failed to state a claim upon which relief can be granted.  Because we find that the district court erred in classifying the clause as a specific merger clause, we reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.

---

[*]The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

**I.**

In January of 2010, Korff, a business owner, attended a Hilton Resorts timeshare presentation in New York City. He told the salesperson, Stephanie Abrams, that he was not interested in purchasing a timeshare plan for himself, but would consider making a purchase if his employees could use the plan to stay at Hilton properties at a reduced cost. Abrams told Korff that she owned a timeshare in the same program, and she assured him that he could use the plan to save money on his employees' accommodations. According to Abrams, each point accumulated under the plan was worth $1.00, and the cost of a hotel room was about $100 per night. Abrams stated that she would be his sole point of contact for booking the rooms, and that his assistant could make the reservations. In reliance on these statements, Korff purchased a timeshare plan for $99,900.

When Korff's assistant first attempted to use the timeshare plan to book a hotel room for Korff's employees, however, she learned that a 3-day stay would cost several thousand points. She was also told that she was not permitted to book rooms on Korff's behalf. When Korff complained, he learned that Abrams no longer worked for Hilton. A different Hilton representative told him that the timeshare program he had purchased was not intended to be used in the manner described by Abrams.

Korff filed suit, alleging four counts of fraud in the inducement. He claimed that Abrams misrepresented that: (1) she was an owner in the program; (2) he could save a significant amount of money on Hilton hotel rooms if he purchased the timeshare; (3) she would be the single point of contact; and (4) Korff's assistant would be able to book hotel rooms for his employees. Korff

alleged that he justifiably relied on these statements to his detriment. He sought to rescind the contract and asked for restitution and punitive damages.

Hilton filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Korff had failed to state a claim upon which relief can be granted. In support, Hilton cited the following merger clause contained in paragraph 12(a) of the timeshare contract:

> The "Contract Documents" consist of: (a) this Purchase Agreement; (b) the Deed; (c) the Note and Mortgage; (d) the Statement of Understanding; and (e) any changes to these documents. All changes must be in writing and each party who has any duty under the change must sign them. The entire agreement between you and the Seller will be contained in the Contract Documents. IT DOES NOT MATTER WHAT YOU ARE TOLD OR SHOWN, OR WHAT YOU MAY TELL OR SHOW THE SALESPEOPLE. ONLY WHAT IS WRITTEN IN THESE DOCUMENTS IS A PART OF THE CONTRACT DOCUMENTS. YOU REALIZE: (1) OFTEN PEOPLE DO NOT FULLY UNDERSTAND EACH OTHER, ESPECIALLY WHEN THEY SPEAK AND DO NOT WRITE DOWN WHAT IS SAID AND (2) THE SELLER IS NOT PRESENT TO HEAR AND CONTROL WHAT SALESPEOPLE MAY TELL OR SHOW YOU. SINCE THE SELLER DOESN'T KNOW AND CANNOT CONTROL EVERYTHING THAT IS SAID, AND TO AVOID MISUNDERSTANDINGS, ALL OF THE AGREEMENTS BETWEEN YOU AND THE SELLER ARE TO BE IN WRITING IN THE CONTRACT DOCUMENTS. YOU AND THE SELLER AGREE THAT NO ONE HAS PROMISED ANYTHING, EXCEPT WHAT IS WRITTEN IN THEM.

The "Statement of Understanding" further provided that "[y]ou should not rely upon any oral representations as the basis for your purchase but rather only upon the purchase agreement and attendant documents provided at purchase." Hilton argued that because Korff had expressly disclaimed reliance on any statements made by salespeople, he was barred from presenting extrinsic evidence to support his claims of fraudulent inducement. The district court agreed.

Under New York law, which governs the claims pursuant to a choice-of-law provision in the contract, the parol evidence rule generally bars proof of oral representations offered to refute the

terms of a written, integrated contract. *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 13 (E.D.N.Y. 1998). The rule, however, is "'ineffectual to exclude evidence of fraudulent representations' in an action to rescind a contract or to recover loss sustained as a result of fraudulent inducement." *Cirillo v. Slomin's Inc.*, 768 N.Y.S.2d 759, 766 (N.Y. Sup. Ct. 2003) (quoting *Sabo v. Delman*, 143 N.E.2d 906 (N.Y. 1957)). In such cases, the admissibility of extrinsic evidence turns on whether the contract contains a *general* merger clause or a *specific* merger clause. A general merger clause essentially states that the parties acknowledge that the written agreement supersedes all prior agreements and constitutes the entire agreement between them. It disclaims reliance on any and all prior oral representations. When the contract contains a general merger clause, extrinsic evidence is admissible to prove fraud in the inducement. *Id.*

In contrast, a specific merger clause disclaims reliance on specific prior oral representations. When the contract expressly disclaims reliance on the same subject matter the plaintiff now claims is fraudulent, extrinsic evidence is inadmissible to prove fraud in the inducement. *Id.* In *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959), the court explained that this is because "[s]uch a specific disclaimer destroys the allegation in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations."

In *Danann*, for example, the plaintiff alleged that he was fraudulently induced to enter into a commercial lease based on false representations concerning the operating expenses of the building and the profits that could be derived from the investment. The contract, however, contained a merger clause which expressly stated that the Seller had made no representations concerning the "physical condition, rents, leases, expenses, [or] operation" of the premises and that the Purchaser

4

acknowledged that no such representations had been made. *Id.* at 598. Because the merger clause specifically and directly disclaimed reliance on the very subject matter the plaintiff now claimed was fraudulent, the court concluded that the plaintiff could not present extrinsic evidence of the prior oral representations. *Id.* at 600.

In Korff's case, the district court found that the timeshare contract contained a specific merger clause because "[r]ather than generally disclaiming reliance on all oral representations, Hilton specifically disclaimed reliance on oral representations *by the salesperson*." Then, quoting *Danann*, the court found that Korff had "in the plainest language announced and stipulated that [he] is not relying on any representations as to the very matter as to which [he] now claims [he] was defrauded." Citing *Marine Midland Bank, N.A. v. Walsh*, 689 N.Y.S.2d 288, 289 (N.Y. Sup. Ct. 1999), the district court further found that even though the contract made no reference to the specific oral representations that comprised the subject matter of Korff's fraudulent inducement claims, the language used was "sufficiently strong" to overcome any reliance on Abrams' statements, and that extrinsic evidence of those statements was therefore barred by the parol evidence rule. The court dismissed Korff's claims, concluding that because evidence of the alleged fraud was inadmissible, Korff failed to state a claim upon which relief can be granted. Korff appealed.

## II.

We review *de novo* the district court's order granting Hilton's motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). We conclude that the district court erred in granting that

motion because, in classifying the provision at issue as a specific merger clause, the court incorrectly applied New York law.

As the court explained in *Danann*, a specific merger clause disclaims reliance on representations concerning the very same *subject matter* that forms the basis of the fraudulent inducement claim. 157 N.E.2d at 599. Under New York law, "a merger clause must address 'the very matter as to which [the party] now claims it was defrauded' in order to bar introduction of parol evidence to prove the alleged fraud." *Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 112 (E.D.N.Y. 2009) (quoting *Danann*, 157 N.E. 2d at 599)). In other words, the contract "must contain explicit disclaimers of the particular representations that form the basis of the fraud-in-the-inducement claim." *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993) (interpreting New York law).

The relevant question is whether the "oral representations . . . directly contradict a specific provision in the agreement." *Fierro v. Gallucci*, No. 06-cv-5189, 2008 WL 2039545, at *13 (E.D.N.Y. May 12, 2008); *see also Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 229 (S.D.N.Y. 2007) (the merger clause must expressly reference "a specific subject of prior representations"); *Caiola v. Citibank, N.A.*, 295 F.3d 312, 330 (2d Cir. 2002) (a disclaimer bars extrinsic evidence only when its substance "tracks the substance of the alleged misrepresentation"); *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, No. 01 Civ. 6600, 2005 WL 3370542, at *4 (S.D.N.Y. Dec. 12, 2005) (a specific disclaimer must "speak directly to the matter at issue in order to preclude a claim of fraud in the inducement").

In this case, the oral representations on which Korff allegedly relied concerned Abrams' ownership in the same timeshare program, Korff's ability to use the timeshare program to save money on hotel rooms, Abrams' role as Korff's sole point of contact, and the ability of Korff's assistant to book rooms on his behalf. Not one of these topics is addressed in the merger clause.[1] Instead, the merger clause broadly disclaims reliance on any "oral representations by the salesperson."

Because the disclaimer does not address the *specific subject matter* that forms the basis for Korff's claims, it must be construed as a general merger clause under New York law. The fact that it disclaims reliance only on those statements made "by the salesperson" does not change anything. In fraudulent inducement cases, the oral representations at issue are quite often made by a salesperson or some other company representative. In determining whether the merger clause is general or specific, the relevant question is not who made the oral representation, but rather whether the substance of the oral representation and the disclaimer "address common topics." *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 417 (2d Cir. 2006) (interpreting New York law).

A very similar clause was at issue in *Cirillo v. Slomin's Inc.*, 768 N.Y.S.2d 759 (N.Y. Sup. Ct. 2003), making that case particularly instructive. There, homeowners purchased a home alarm

---

[1] Hilton notes that although Korff alleges that Abrams told him that the timeshare program could be used to save money on hotel rooms for his employees, paragraph 13 of the Statement of Understanding specifically states that the purchase should be based on "personal vacation use and enjoyment and not with an expectation of financial or monetary advantage . . ." The remainder of the quotation, however, defines "financial or monetary advantage" to include "rental income," or "price appreciation through resale or tax advantage." It makes no mention of any expectation of financial advantage when the purchaser uses his accumulated points to save money on hotel rooms for his or her employees.

system based on numerous statements made by the salesperson. The salesperson generally discussed the alarm system's fail-safe nature and told them that it would not be compromised even if the telephone wires were cut. This proved to be a false statement. The system failed to operate when a burglar cut the telephone lines and broke into their house. The homeowners filed suit, alleging fraudulent inducement.

The contract at issue stated that it constituted the "full understanding of the parties" and that there were "no oral Agreements, understandings or representations between the parties." It also stated that "[t]he salesman has no authority to change any terms or make representations other than contained in this Agreement, and the buyer represents that none have been made to or relied upon by the Buyer." *Id.* at 766. The court found that these were general disclaimers because they did "not identify any particular subject matter, let alone the very matter as to which plaintiffs claim they were defrauded." *Id.*

In addition to these general disclaimers, however, the contract also stated that the company made no representation that the alarm system may not be "circumvented, compromised, or defeated." The court found that this was a specific disclaimer that directly contradicted the salesperson's statement that the alarm system would work even if the telephone lines were cut. Interestingly enough, the court allowed the homeowners to present extrinsic evidence of that statement anyway. *Id.* at 767. The court noted that, unlike *Danann*, which involved an arms-length transaction between sophisticated business people, this was a consumer transaction involving a boilerplate contract. The court found that "the consumer must be afforded more protection and the reality of his contractual statements must be examined more closely." *Id.*

8

> Upon whom or what else is the consumer supposed to rely? The merchant presumably trains and presents its salespersons to consumers for purposes of providing them with information about the company's product or service. Such merchant cannot be permitted to escape all responsibility for the information provided simply by including a disclaimer of authority in a form contract. It cannot cloak its agents with authority on the one hand, and then deny it on the other.

*Id.* at 768. "If the allegations state with particularity the oral representations relied upon, together with contextual facts, in sufficient detail to permit the court to gauge their inherent credibility, then the plaintiff should be permitted to go forward with his proof, notwithstanding the existence of a specific disclaimer in the contract form." *Id.*

Hilton argues that *Cirillo* is inapplicable because Korff's purchase was not a consumer transaction. Rather, Korff purchased the timeshare plan with the intent of using it for business purposes. But regardless of how Korff intended to use the plan, this was not an arms-length transaction between two sophisticated business entities who were both represented by counsel. Instead, this involved a standard, boilerplate contract, making it more akin to the consumer transaction at issue in *Cirillo*. In any event, the court need not decide whether Korff's timeshare purchase was a consumer transaction or a business transaction. Regardless of the nature of the transaction, the bottom line is that the contract contained a general merger clause rather than a specific merger clause.

The district court found that the language of the disclaimer was "sufficiently strong to overcome any claim of reliance on oral statements." In so holding, the court erroneously relied on *Marine Midland Bank N.A. v. Walsh*, 689 N.Y.S.2d 288 (N.Y. Sup. Ct. 1999). The defendant in *Marine Midland Bank* alleged that he had been fraudulently induced to execute a loan guaranty based

9

on oral representations that, in exchange for the guaranty, plaintiff would release a mortgage held on the property. The guaranty at issue was "absolute and unconditional" and specifically stated that it "shall not be changed or affected by any representation, oral agreement, act or thing whatsoever." *Id.* at 289. It was intended to be "the final, complete and exclusive expression of the agreement." *Id.* The court held that, although the guaranty made no mention of the subject matter of the fraud claim, *i.e.,* the release of the mortgage, the substance of the guaranty was sufficient to destroy the defendant's allegation that the guaranty was executed in reliance on a contrary oral representation. *Id.*

In support of this holding, the *Marine Midland Bank* court cited *Citibank v. Plapinger*, 485 N.E.2d 974 (N.Y. 1985), which involved an "absolute and unconditional" personal loan guaranty of corporate officers. That guaranty was allegedly given in exchange for an oral agreement that the bank would extend an additional multimillion-dollar line of credit to the corporation. It was hammered out after "extended negotiations between sophisticated business people." *Id.* at 977. Moreover, it was an absolute guaranty irrespective of any lack of validity of the loan agreement and of "any other circumstance which might otherwise constitute a defense." *Id.* The court held that it was "unrealistic in such circumstances to expect an express stipulation that defendants were not relying on a separate oral agreement to fund an additional multimillion dollar line of credit, when they themselves have denominated their obligation unconditional." *Id.*

*Marine Midland Bank* and *Plapinger* do not apply to the facts of this case. The timeshare contract does not contain any "absolute and unconditional" disclaimer, and it was not the result of "extended negotiations between sophisticated business people." Instead, it contains boilerplate

10

language, generally disclaiming reliance on statements made by Hilton salespeople. In addition, unlike the corporate officers in *Plapinger*, Korff did not agree to waive all defenses to the contract. Under the circumstances presented here, the district court erred in holding that the language of the disclaimer was "sufficiently strong" to disclaim all reliance on Abrams' statements.

The Second Circuit Court of Appeals has held that "the ruling in *Plapinger* does not materially alter the principle established by *Danann*." *Yanakas*, 7 F.3d at 316. The "touchstone" is still specificity. If the disclaimer at issue does not specifically disclaim reliance on the subject matter that forms the basis for the claim of fraudulent inducement, dismissal of the claim is inappropriate. *Id.* at 316-17.

Such is the case here. Because the merger clause at issue does not address the same subject matter that forms the basis for Korff's fraudulent inducement claims, it must be classified as a general merger clause under New York law. As such, evidence of Abrams' alleged misrepresentations is admissible to prove fraud in the inducement.

**III.**

For the reasons set forth above, we **REVERSE** the district court's order dismissing Korff's claims for failure to state a claim upon which relief can be granted, and **REMAND** for further proceedings consistent with this opinion.