Filed 09/09/24

STATE OF VERMONT

SUPERIOR COURT                                              CIVIL DIVISION
Orleans Unit                                               Docket No. 22-CV-1922

STOWE AVIATION, LLC and,
STOWE AIRPORT INVESTMENT, LP
    Plaintiffs

    v.

STATE OF VERMONT AGENCY OF
COMMERCE AND COMMUNITY DEVELOPMENT,
    Defendant

DECISION
**Defendant's Motion to Dismiss Second Amended Complaint (Motion #26), and
Defendant's Motion to Strike Portions of Second Amended Complaint (Motion #27)**

Defendant Agency of Commerce and Community Development ("ACCD"), an agency of the State of Vermont, moves to dismiss the Second Amended Complaint against it. Plaintiffs (collectively "Stowe Aviation") assert claims of breach of contract and breach of the implied covenant of good faith and fair dealing. ACCD moves to dismiss the Complaint for failure to state a claim and for lack of subject matter jurisdiction, and if that motion is not granted, it also moves to strike certain paragraphs from the Complaint. Plaintiff is represented by Attorney Michael B. Stevens and ACCD is represented by David R. Groff of the Attorney General's Office.

**I.      MOTION TO DISMISS SECOND AMENDED COMPLAINT (Motion #26)**

When ruling on a motion to dismiss, the court assumes that the facts pleaded in the complaint are true and makes all reasonable inferences in the plaintiff's favor. *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. "A court should grant a motion to dismiss for failure to state claim only when 'it is beyond doubt that there exist no facts or circumstances that would entitle [the plaintiff] to relief.'" *Id.* (quoting *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002)). A motion to dismiss "'test[s] the law of the claim, not the facts which support it.'" *Id.* (quoting *Powers*, 173 Vt. at 395). "Motions to dismiss for failure to state a claim are disfavored and are rarely granted." *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1 (citing *Gilman v. Me. Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554).

Allegations of the Complaint

Stowe Aviation ("SA") asserts the following in the Complaint. On May 30, 2014, Stowe Aviation entered into a Memorandum of Understanding (MOU") with ACCD ("SA MOU") to enable it to participate in the EB-5 program administered by the United States Customs and Immigration Services ("USCIS"). ACCD was a Regional Center designated by USCIS for purposes of administration of the program. Based on the terms of the SA MOU, Stowe Aviation

1

began working with and accepting investments from United States citizens and foreign investors. Its project was to develop, expand, and improve the Morrisville-Stowe State Airport ("the KMVL Project"). Complaint ¶¶ 7, 12. The ACCD's EB-5 program provided the major source of financing for the KMVL Project. *Id.* ¶ 12. Relying on the SA MOU, Stowe Aviation spent substantial time, money, and resources to finalize its business plan, which included raising approximately $1,700,000 in private investor financing as well as obtaining permits, licenses, and leases. *Id.* ¶ 13.

The SA MOU, which is attached to the Complaint as an exhibit, set forth obligations by both Stowe Aviation and ACCD.[1] ACCD's obligations as a Regional Center under the USCIS EB-5 program included asking USCIS to designate Stowe Aviation's project as a participant in the program, and SA's obligations included assisting ACCD in complying with its obligations to USCIS as a Regional Center. Exhibit A to the Complaint, ¶ 3.[2]

Two and a half years later, on December 22, 2014, ACCD entered into a memorandum of understanding with the Vermont Department of Financial Regulation ("DFR") in which ACCD obtained assistance from DFR for some of its obligations as a Regional Center. ("DFR MOU"). Specifically, ACCD would continue to be in charge of marketing, and DFR assumed responsibility for approval of new projects and monitoring the already-approved EB-5 projects. Exhibit G to the Complaint, at 2.

On July 28, 2016, after problems with Regional Center oversight of other EB-5 projects had surfaced, Stowe Aviation sent a letter to ACCD claiming that ACCD had breached the SA MOU. Complaint ¶ 36; Exhibit K to Complaint. Among other concerns, Stowe Aviation asserted that ACCD was in breach based on its "relinquishment of authority to the DFR" as set forth in the DFR MOU and DFR's "imposition of a new . . . policy in which it attempt[ed] to prevent a legally permissible release of escrowed funds unless five (5) I-526 petitions [were] approved[.]" Exhibit K at 3. In the letter, Stowe Aviation asserted that DFR was "attempting to implement a policy that [would] operate to hinder SA's transparent and compliant project; exposing investors to unnecessary immigration and investment risk." *Id.* Stowe Aviation stated that the Vermont Regional Center ("VRC") and DFR had notified Stowe Aviation that it was being placed in "quiet time" and that it was required to "cease soliciting investors pending execution of a new MOU," which the DFR suggested would include restrictions not required by federal law. *Id.* Stowe Aviation also asserted in the letter that VRC and ACCD violated the SA MOU by prohibiting it from making reasonable and necessary changes to its private placement memorandum. *Id.* at 4. In addition, Stowe Aviation asserted that DFR's attempt to coerce it to execute a new MOU "amounts to an anticipatory breach of its current MOU with ACCD and a failure to obtain reasonable assurances from the DFR, ACCD and VRC." *Id.* at 5.

---

[1] The court may properly consider the documents Stowe Aviation attaches as exhibits to the Complaint, to the extent the Complaint is based on the documents, without transforming the motion into one for summary judgment. *Vt. State Auditor v. OneCare Accountable Care Org., LLC*, 2022 VT 29, ¶ 9 n.1; *Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 13, 198 Vt. 204.

[2] According to the Complaint, the Vermont Regional Center is not a distinct legal entity; rather, it is "a moniker for the regional center operated by ACCD through its employees." Complaint ¶ 5.

By letter dated July 28, 2016, ACCD and DFR denied that they had breached the SA MOU and asserted that Stowe Aviation was in breach because it had failed to raise enough funds to complete its EB-5 project. ACCD and DFR proposed terminating the SA MOU. Complaint ¶ 37; Exhibit L to Complaint. ACCD canceled the SA MOU on October 24, 2016. Complaint ¶ 51g.

*SA's Breach of Contract Claim*

Stowe Aviation asserts that ACCD breached the SA MOU as follows:

a. Executing the MOU with the DFR on December 22, 2014 without providing notice to STOWE AVIATION. Without STOWE AVIATION's approval or consent, the DFR assumed VRC's obligations relating to the EB-5 programs, including KMVL. Ceding authority to the DFR by the ACCD constituted a material change/deviation to the SA MOU and hampered STOWE AVIATION's ability to raise investor funding;

b. Allowing the DFR to put STOWE AVIATION in "quiet time" and prohibiting STOWE AVIATION from soliciting new investors until it entered into a new MOU or face a shutdown of the Project and "cancellation" of the SA MOU;

c. Expressing doubts publicly about STOWE AVIATION's economist-backed job forecasts without any supporting economic data or foundational support;

d. Obstructing STOWE AVIATION's ability to comply with its business goals as outlined in the SA MOU by creating additional demands not included within the SA MOU;

e. Threatening to shut down the STOWE AVIATION project unless a new MOU was executed;

f. Falsely claiming a breach of the SA MOU in its July 28, 2016 correspondence in response to STOWE AVIATION's July 20, 2016 Notice of Breach letter;

g. Cancelling the SA MOU on October 24, 2016 through a letter titled Notice of Cancellation;

h. Transmitting the October 24, 2016 Notice of Cancellation to STOWE AVIATION's lender which caused the lender to cut off STOWE AVIATION's financing, thereby crippling its ability to raise temporary and/or permanent financing for the improvement and expansion of KMVL; and

i. Falsely suggesting in a letter to the USCIS that SA's issues with raising EB-5 financing was SA's fault.

Complaint ¶ 51.

Stowe Aviation asserts that ACCD's breach frustrated its ability to further its business purpose and caused its project to be shut down, which meant it could no longer raise foreign investor capital. Stowe Aviation's lender terminated its financing upon receiving ACCD's notice of cancellation, and Stowe Aviation was forced to close its doors. Stowe Aviation claims that it suffered $2,456,316 in damages as a result of ACCD's wrongful actions. *Id*. ¶ 52.

### *SA's Claim of Breach of the Covenant of Good Faith and Fair Dealing*

Stowe Aviation also alleges that ACCD breached the implied covenant of good faith and fair dealing. The basis for this claim, as set forth in the Complaint, is that ACCD acted in ways that jeopardized the status of the VRC with the USCIS by failing to monitor other projects unrelated to Stowe Aviation that ultimately led to the termination of the VRC. Complaint ¶¶ 58–64. Stowe Aviation describes this misconduct as follows:

a. Failing to maintain an arm's length relationship with other projects;

b. Failure by the ACCD to provide adequate and proper oversight of its projects;

c. Failure by the ACCD to provide adequate and proper monitoring of its projects;

d. Failure by the ACCD to provide adequate and proper management of its projects;

e. Misrepresentations by the ACCD to the USCIS with regards to sponsored job-creating projects funding;

f. Misrepresentations by the ACCD to the USCIS with regards to sponsored job-creating projects prospects for success;

g. Misrepresentations by the ACCD to EB-5 Investors with regards to sponsored job-creating projects funding;

h. Misrepresentations by the ACCD to EB-5 Investors with regards to sponsored job-creating projects funding;

i. Failure by the ACCD to maintain records on a quarterly basis of its projects;

j. Failure by the ACCD to maintain data on a quarterly basis of its projects;

k. Failure by the ACCD to maintain information on a quarterly basis of its projects;
l. Failure to invoke the quarter report requirements of its MOU on its projects;

m. Failure to confirm the status of alien investor capital (in escrow, transfers from escrow to the limited partnership) on its projects;

n. Failing to correct false and misleading representations made by the ACCD to the USCIS after becoming aware of their falsities;

4

o. Verbally and physically intimidating and bullying employees of STOWE AVIATION which interfered with its approved marketing efforts;

p. Allowing EB-5 capital to be diverted from other projects.

Complaint ¶ 60.

Stowe Aviation included additional allegations in support of this claim regarding ACCD's conduct aiding and abetting ongoing fraud at VRC in connection with other EB-5 projects unrelated to the KMVL Project. See *id*. ¶ 61. Stowe Aviation asserts that ACCD's breaches of the implied covenant of good faith and fair dealing proximately caused the KMVL Project to be shut down and caused it damages totaling $2,456,316. *Id*. ¶ 67.

*Analysis*

ACCD raises several arguments in support of its motion to dismiss.

First, it argues that Stowe Aviation cannot prevail on its breach of contract claim because it relies on ACCD's failure to supervise other projects unrelated to Stowe Aviation. While ACCD's alleged failure to supervise other projects does not constitute a breach of the SA MOU because the SA MOU does not address other EB-5 projects or ACCD's oversight thereof, the issue is whether there are sufficient alleged facts to state a claim for breach of the SA MOU between the parties. ACCD further argues that Stowe Aviation fails to point to any provision of the SA MOU that ACCD violated. According to ACCD, its only obligation under the SA MOU was to notify USCIS of the KMVL project, and Stowe Aviation does not allege that ACCD failed to do this. Motion at 3–4. ACCD argues that the SA MOU did not preclude it from "putting Stowe Aviation in quiet time," did not limit it from making public statements, did not prevent it from notifying Stowe Aviation's lender that the SA MOU had been canceled, and did not curb what it could say about the termination. Motion at 11. The fact that the SA MOU did not expressly address any of these issues, however, does not mean that such conduct on the part of ACCD did not constitute a breach of the SA MOU. To the extent that ACCD's actions/conduct prevented Stowe Aviation from performing in accordance with the terms of the SA MOU, which Stowe Aviation asserts was the case, Stowe Aviation has stated a claim for breach. See *McGee Constr. Co. v. Neshobe Dev., Inc.*, 156 Vt. 550, 554 (1991) (one party may be liable for breach of contract where it interferes with other party's performance); accord *Kunda v. Morse*, 145 A.3d 51, 57 (Md. Ct. Spec. App. 2016).

Second, ACCD contends that the SA cannot point to anything in the SA MOU that limits its ability to cancel the contract. Motion at 11. The SA MOU provides procedural protections related to cancellation and specifically sets forth "potential reasons for cancellation," all of which would be based on Stowe Aviation's failure to follow laws, rules, or regulations, or engage in some sort of misconduct. Exhibit A ¶ 21. SA claims that ACCD/DFR's cancellation was unjustified and a breach of contract. The list of "potential" reasons for cancellation is, by its terms, non-exclusive. All of the identified reasons require some level of wrongdoing on SA's part. Contrary to its argument otherwise, ACCD was not entitled to cancel the SA MOU for no reason at all. If that

5

were the case, the MOU would not be an enforceable contract as there would be no consideration. "Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise. . . . Where the apparent assurance of performance is illusory, it is not consideration for a return promise." Restatement (Second) of Contracts § 77 cmt. a. Whether ACCD had a valid reason for cancellation consistent with the examples of "potential" reasons and followed the proper procedure cannot be determined on a motion to dismiss. Such a determination requires development and consideration of specific facts. ACCD's argument that it had complete discretion to cancel a contract that it entered, especially one that specifies representative grounds for cancellation, fails as a matter of law. ACCD alternatively argues that DFR's reasons for cancellation fall within what was contemplated in paragraph 21 of the SA MOU. Motion at 11. As noted, this requires a factual determination. The claim is sufficient to meet "lenient notice-pleading standards." *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 59.

Third, ACCD argues that ACCD did not breach the MOU by contracting with DFR for DFR to assume authority for project oversight. It contends that the SA MOU did not prevent DFR from performing functions related to the VRC. See Motion at 9. The SA MOU defines ACCD as "State of Vermont Agency of Commerce and Community Development, and its successors and assigns." Exhibit A at 1. Stowe Aviation thereby accepted the possibility that ACCD could assign its rights and obligations to successors. Therefore, the mere fact of assignment of some responsibilities to DFR cannot be the basis for a breach of contract claim. However, Stowe Aviation also asserts that ACCD allowed DFR to require Stowe Aviation to execute a new MOU that had different terms than the SA MOU and cancelled the SA MOU when Stowe Aviation refused to do so. This constitutes a colorable claim for breach of contract.

As set forth in the May 3, 2023 Decision on ACCD's Motion to Dismiss First Amended Complaint, the court concludes that Stowe Aviation states a claim for breach of contract based on its assertions that ACCD allowed DFR to prohibit Stowe Aviation from soliciting new investors until it entered into a new MOU, allowed DFR to require Stowe Aviation to execute another MOU with different terms than the SA MOU or face cancellation, and canceled the SA MOU in October 2016.

As to Stowe Aviation's claim for breach of the implied covenant of good faith and fair dealing, ACCD argues that it is redundant of its breach of contract claim. Motion at 12–13. It is well-accepted that "'[w]here a party alleges both breach of contract and breach of the implied covenant of good faith and fair dealing, dual causes of action are permitted only where the different actions are premised on different conduct[.]'" *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 53 (quoting *Tanzer v. MyWebGrocer, Inc.*, 2018 VT 124, ¶ 33, 209 Vt. 244). ACCD argues that the claim for breach of the implied covenant of good faith and fair dealing is based primarily on ACCD's alleged failure to oversee EB-5 projects other than KMVL and its subsequent termination by USCIS as a regional center. It is accurate that with respect to the covenant claim, Stowe Aviation asserts: "Without the ACCD maintaining the VRC's status as a regional center from the USCIS, Stowe Aviation would be unable to perform under the SA MOU." Complaint ¶ 57.

The covenant of good faith and fair dealing is implied in every contract and "'serves to ensure that parties to a contract act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Baldauf v. Vt. State Treasurer*, 2021 VT 29,

¶ 27, 215 Vt. 18 (quoting *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 62, 212 Vt. 612); accord *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208 (1993) (quoting Restatement (Second) of Contracts § 205 comment a). "An underlying principle implied in every contract is that each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement." *Carmichael*, 161 Vt. at 208 (citing *Shaw v. E.I. DuPont de Nemours & Co.,* 126 Vt. 206, 209 (1966)). The covenant extends to "'actions taken in terminating a contract and winding up the contractual relationship between the parties.'" *Beldock*, 2023 VT 35, ¶ 52 (quoting *Tanzer*, 2018 VT 124, ¶ 32). Whether a party acts in "good faith" is context-specific, and, although there is not a sure and fast definition, interfering with or failing to cooperate in the other party's performance constitutes bad faith. *Carmichael*, 161 Vt. at 209 (citing Restatement (Second) of Contracts § 205 comment d). Ultimately, "good faith is ordinarily a question of fact, one particularly well-suited for juries to decide." *Id*. at 209 (quoting J. Calamari & J. Perillo, Contracts § 11–38(c) (1987)); accord *Beldock*, 2023 VT 35, ¶ 52.

ACCD argues that any misconduct concerning EB-5 projects unrelated to Stowe Aviation cannot support a claim for breach of the implied covenant of good faith and fair dealing relating to the SA MOU. This argument is valid. Nothing in the SA MOU links ACCD's oversight of other projects to SA's KMVL project. ACCD was operating in good standing in its capacity as a Regional Center when the SA MOU was canceled; USCIS did not terminate its status as a Regional Center until later. Stowe Aviation asserts no effect on the SA MOU from ACCD's alleged misconduct overseeing any other EB-5 projects.

However, Stowe Aviation also makes allegations of other specific conduct related to the KMVL project in support of its claim for breach of the implied covenant: "Verbally and physically intimidating and bullying employees of STOWE AVIATION which interfered with its approved marketing efforts[.]" Complaint ¶ 60o. In addition, the following allegations of fact support a breach of the implied covenant cause of action consistent with the case law cited above:

- Expressing doubts publicly about STOWE AVIATION's economist-backed job forecasts without any supporting economic data or foundational support;

- Threatening to shut down the STOWE AVIATION project unless a new MOU was executed;

- Falsely claiming a breach of the SA MOU in its July 28, 2016 correspondence in response to STOWE AVIATION's July 20, 2016 Notice of Breach letter;

- Transmitting the October 24, 2016 Notice of Cancellation to STOWE AVIATION's lender which caused the lender to cut off STOWE AVIATION's financing, thereby crippling its ability to raise temporary and/or permanent financing for the improvement and expansion of KMVL; and

7

- Falsely suggesting in a letter to the USCIS that SA's issues with raising EB-5 financing was SA's fault.

*Id*. ¶ 51c, e, f, h, i.

The court concludes that Stowe Aviation has stated a claim for ACCD's breach of the implied covenant of good faith and fair dealing sufficient to satisfy notice pleading standards based on conduct other than the conduct alleging breach of contract. While conduct supporting a breach of the covenant claim must not be the same as the conduct supporting a breach of contract claim, there are sufficient allegations of different conduct to deny dismissal of the breach of covenant claim as a separate cause of action. However, the claim of breach of the implied covenant of good faith and fair dealing may not be based on conduct related to other EB-5 projects, and to the extent SA seeks to do so, the Motion to Dismiss is granted. To the extent it is based on conduct related to the SA MOU and is distinct from the conduct alleged as breach of contract, the Motion to Dismiss is denied.

## *ACCD's claim of Sovereign Immunity*

ACCD contends that the doctrine of sovereign immunity protects it from Stowe Aviation's claims. "Sovereign immunity protects the State and its components from suit unless it is expressly waived by statute." *Sutton*, 2019 VT 71A, ¶ 35 (citing *Jacobs v. State Teachers' Ret. Sys. of Vt.*, 174 Vt. 404, 408 (2002)). ACCD relies on exceptions found in the Vermont Tort Claims Act, 12 V.S.A. § 5601–06 ("VTCA" or "the Act"), to support its argument. See Motion at 13–16 (ACCD relies on the discretionary function exception, the misrepresentation exception, and the interference with contracts exception of Act). The problem with this argument, however, is that Stowe Aviation's claims sound in contract, not tort.

It bears noting that the plaintiffs in *Sutton* stated claims against ACCD for breach of contract and breach of the implied covenant of good faith and fair dealing, and the Vermont Supreme Court reinstated those claims when reviewing the trial court's dismissal of the complaint at issue there. *Sutton*, 2019 VT 71A, ¶ 59. The *Sutton* Court addressed the Vermont Tort Claims Act and its exceptions, including the discretionary function exception, yet it did not find that the Act applied to bar the plaintiffs' breach of contract or breach of the implied covenant claims. 2019 VT 71A, ¶¶ 35–43, 59. Unlike Stowe Aviation, which was a party to the SA MOU, the plaintiffs in *Sutton* were foreign investors who were not parties to the MOUs at issue in that case, yet the Court still found the foreign investors "made out claims against ACCD for breach of contract and breach of the implied covenant of good faith and fair dealing." *Id*. ¶ 59.[3]

---

[3] The court rejects ACCD's contention that "[i]n *Sutton*, the implied nature of contract made it impossible to assess at the motion to dismiss stage whether the conduct at issue was discretionary and thus immune." Reply at 6. The *Sutton* Court limited its discussion of sovereign immunity and the discretionary function exception to the negligence and gross negligence causes of action and did not even consider whether sovereign immunity applied to the contract causes of action (breach of contract and breach of the implied covenant of good faith and fair dealing). See *Sutton*, 2019 VT 71A, ¶¶ 35–58. The fact that the *Sutton* plaintiffs' contract claims were ultimately found to be based, not on the MOUs, but rather on ACCD's promises of oversight of the projects, does not change the fact that the Vermont Tort Claims Act does not apply to claims based fundamentally on contracts.

By characterizing Stowe Aviation's claims as tort claims and arguing that it is immune from the tort causes of action, ACCD seems to acknowledge that the State can be liable for breaching contracts. The case law supports this principle. In *Jacobs*, the Vermont Supreme Court accepted the plaintiff's argument that the State waived its sovereign immunity for breach of contract claims. *Jacobs*, 174 Vt. at 414. The *Jacobs* Court cited *Smith v. State*, 222 S.E.2d 412 (N.C. 1976), for support, which held that the State of North Carolina "implicitly consents to be sued for damages" whenever it enters into a contract through its authorized officers and agencies. *Smith*, 222 S.E.2d at 423–24; see also *Univ. of Fla. Bd. of Trustees v. Rojas*, 351 So.3d 1167, 1170 (Fla. Dist. Ct. App. 2022) ("When the State contracts with a private entity, then 'the defense of sovereign immunity will not protect the state from action arising from the state's breach of that claim.'") (quoting *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So.2d 4, 5 (Fla. 1984)). The *Pan-Am Tobacco Corp.* court provided a well-reasoned explanation for this:

> Where the legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, the legislature has clearly intended that such contracts be valid and binding on both parties. As a matter of law, the state must be obligated to the private citizen or the legislative authorization for such action is void and meaningless. We therefore hold that where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract.

*Pan-Am Tobacco Corp.*, 471 So.2d at 5. It is noteworthy that the claims in this suit are against ACCD in its capacity as a Regional Center for USCIS. In that capacity it was not engaged in statutorily required governmental functions, but rather took on the role of being a regional center for USCIS, which was a role available to private entities. It was in that capacity that it entered into an MOU with Stowe Aviation.

ACCD does not argue that breach of the implied covenant of good faith and fair dealing is a tort subject to the Vermont Tort Claims Act, which is formally entitled "Tort Claims Against the State." Although a breach of covenant claim has been described as a tort when discussing whether punitive damages are available for its breach, *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 54 n.5, the Vermont Supreme Court has clarified that claims for breach of the implied covenant "are not fully and exclusively torts," *Harsch Props., Inc. v. Nicholas*, 2007 VT 70, ¶ 17, 182 Vt. 196. "The implied covenant arises out of a contractual relationship between the parties and creates duties under the contract." *Harsch Props.*, 2007 VT 70, ¶ 17 (citing *Monahan*, 2005 VT 110, ¶ 54 n.5, and *Carmichael*, 161 Vt. at 209–10).[4]

---

[4] Missouri treats breach of the covenant as a contract action. See *Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 188 (Mo. Ct. App. 2017). Other courts have found that breach of the implied covenant of good faith does not sound in tort, stating that it "directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced[.]" *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1106 (7th Cir. 1997) (citation omitted). The implied covenant is so intertwined with the contract between the parties that the court in *Echo* and some other cases treat it, not as a separate cause of action at all, but rather as an aspect of a breach of contract claim. See, e.g. *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995) (addressing Illinois law); *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir. 1994) (addressing Minnesota law); *Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F.Supp.2d 193, 196–97 (E.D.N.Y. 2001) (addressing New

Regardless of whether the cause of action is classified as sounding in contract or tort, the Vermont Tort Claims Act does not immunize the State from claims that have a private analog, which a claim for breach of the implied covenant undisputedly does. See 12 V.S.A. § 5601(a) (State is liable for wrongful act "under the same circumstances, in the same manner, and to the same extent as a private person would be liable to the claimant"); *Wool v. Menard*, 2018 VT 23, ¶ 9, 207 Vt. 25 (discussion of private analog exception to State's immunity under VTCA). The court rejects ACCD's argument that Plaintiff's claims are barred by the discretionary function exception to the State's waiver of immunity under the Vermont Tort Claims Act, see Motion at 14–15, and concludes that breach of the implied covenant of good faith and fair dealing is not the type of action the Tort Claims Act was meant to address.

For the reasons stated, ACCD's Motion to Dismiss the Second Amended Complaint is granted as to any claim for breach of the covenant of good faith and fair dealing that is based on conduct unrelated to the SA MOU, but otherwise denied.

## II.   MOTION TO STRIKE PORTIONS OF SECOND AMENDED COMPLAINT (Motion #27)

ACCD also moves, pursuant to V.R.C.P. 12(f), for the following paragraphs of Stowe Aviation's Complaint to be stricken: 18–35, 38–46, and 59–62. Rule 12(f) allows a party to move the court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Motions to strike are generally disfavored, and "'[c]ourts should not tamper with the pleadings unless there is a strong reason for doing so.'" *Green Star Energy Sols., LLC v. Edison Props., LLC*, No. 21-cv-2682 (LJL), 2022 WL 16540835, at *17 (S.D.N.Y. Oct. 28, 2022) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). However, striking portions of pleadings may be appropriate when the material sought to be stricken "'can have no possible bearing on the subject matter of the litigation.'" *Id.* (quoting *Ulla-Maija, Inc. v. Kivimaki*, No. 02 Civ. 3640(AGS), 2003 WL 169777, at *4 (S.D.N.Y. Jan. 23, 2003)); accord *Reiter's Beer Distribs., Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 144 (E.D.N.Y. 1987) ("A motion to strike will be granted if the disputed matter is irrelevant under any state of facts which could be proved in support of the claims being advanced.") (citation and quotation marks omitted)).

With the exception of paragraphs 30 and 60o,[5] the facts asserted in the paragraphs ACCD seeks to have stricken relate to ACCD's alleged misconduct in connection with EB-5 projects that

---

York law); see also *JHE, Inc., v. Se. Pa. Transp. Auth.*, No. 1790 Nov.Term 2001, Control 010312, Control 020586, 2002 WL 1018941, at *6 (Pa. Ct. C.P. May 17, 2002) (noting some courts have found that "breach of the covenant of good faith is subsumed in a breach of contract claim").

[5] Paragraph 30 states:

> In an effort to manipulate the optics that it was trying to stop the bleeding, the ACCD signed an MOU with the Vermont Department of Financial Regulation on December 22, 2014 (the "DFR MOU") attempting to delegate its responsibilities under SA MOU and the Regional Center as a whole. Such a delegation of its contractual obligations was unauthorized and done without

were unrelated to the KMVL Project, some of which allegedly occurred before the SA MOU was executed, and some of which allegedly occurred after the SA MOU was canceled. As stated above, and as the court wrote in its earlier decision dated May 3, 2023, the SA MOU did not obligate ACCD to act in any particular way with respect to any EB-5 project other than the KMVL Project, and Stowe Aviation fails to allege that any misconduct by ACCD in managing or overseeing other EB-5 projects proximately caused it to suffer harm.

The motion is granted on the grounds that the challenged subject matter is immaterial to the elements of the two undismissed causes of action before the court. Evidence regarding ACCD's conduct related to other EB-5 projects would only cause confusion and divert the parties from the only pertinent issues in this case—the claims related to the KMVL Project. The purpose of granting the motion is to ensure that discovery is limited to the facts material to the claims as allowed in this decision. Thus, the court grants ACCD's motion in part and strikes from the Complaint ¶¶ 18–29, 31–35, 38–46, and 59–62 with the exception of ¶ 60o. Paragraphs 30 and 60o shall not be stricken. The court also strikes the exhibits referenced in these paragraphs, which includes Exhibits B, C, D, E, F, H, I, J, M, N, and O.

## SUMMARY and ORDER

For the reasons set forth above,

1. ACCD's Motion to Dismiss the Second Amended Complaint (Motion #26) is *granted in part as set forth above and otherwise denied,*
2. ACCD's Motion to Strike (Motion #27) is *granted in part as set forth above,* and
3. ACCD's Answer is due within fourteen (14) days.

Electronically signed September 9, 2024 pursuant to V.R.E.F. 9 (d).

Mary Miles Teachout

Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned

---

STOWE AVIATION's knowledge, approval or consent. A copy of the DFR MOU is attached hereto as Exhibit "G."

Paragraph 60o states:

The ACCD breached the implied covenant of good faith and fair dealing when it acted in bad faith by conducting itself as follows:

. . .

Verbally and physically intimidating and bullying employees of STOWE AVIATION which interfered with its approved marketing efforts[.]